IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| VS. | ) Case No.   SA-18-CR-013 XR |
| PAUL CASEY WHIPPLE, | ) |
| Defendant. | ) |

### UNITED STATES' MEMORANDUM REGARDING RESTITUTION

The Supreme Court in *Paroline v. United States*, 134 S.Ct. 1710 (2014), directed that the defendant should be ordered to pay some amount of the victims' general losses in restitution and suggested factors for the District Court to consider.

The United States received eighteen (18) requests for restitution as of today's date. (Angela has notified the undersigned AUSA that her request for restitution was submitted in error and has withdrawn the request.) To aid the Court in navigating restitution, the government submits this memorandum and requests that restitution be ordered for each of the eighteen (18) victims listed below. It should be noted that the primary victim in this case, CV1, is not submitting a request for restitution from the Defendant.

**I.      Mandate for Ordering Restitution**

Title 18, United States Code, Section 2259 provides for mandatory restitution for victims of certain child exploitation offenses.  Prior to *Paroline v. United States*, 134 S.Ct.

1710 (2014), the circuits were split over the level of causation required by Section 2259.[1] While many circuits held that a finding of proximate causation was required, the Fifth Circuit disagreed, finding no proximate-causation showing was required for losses outlined in Section 2259(b)(3)(A)-(E). *See*, *In re Amy Unknown*, 701 F.3d 749, 752 (5th Cir. 2012).

In *Paroline*, the Supreme Court held that all six categories of losses in Section 2259(b)(3) require a showing of "proximate causation," which has two components: a factual, causal connection between the offense and the injury (cause-in-fact) and a limitation on recovery for remote damages (proximate cause). 134 S.Ct. 1710, 1719.

As background, Paroline was convicted of possessing child pornography, including two images of "Amy," the victim in a widely distributed series of child pornography images. Amy sought approximately $3.3 million in restitution for counseling and lost wages. Paroline contended, and the district court agreed, that Amy could not show that any of her losses were directly attributable to Paroline's offense and that she would not have incurred them had he never seen her pictures. 134 S. Ct. at 1718. The district court accordingly awarded no restitution. Amy petitioned for a writ of mandamus pursuant to 18 U.S.C. § 3771 (d)(3), arguing that the five enumerated categories of losses in Section 2259(b)(3) contain no proximate cause requirement, and that Paroline was required by statute to pay her for the full amount of her losses. The *en banc* Fifth Circuit agreed, holding

---

[1] The Fifth Circuit held no proximate-causation showing required for losses outlined in Section 2259(b)(3)(A)-(E). *In re Amy Unknown*, 701 F.3d 749, 752 (5th Cir. 2012).Other circuits required a finding of proximate causation: *United States v. Kearney*, 672 F.3d 81, 95-96 (1st Cir. 2012); *United States v. Aumais*, 656 F.3d 147, 154-55 (2d Cir. 2011); United States v. Crandon, 173 F.3d 122, 126 (3d Cir. 1999); *United States v. Burgess*, 684 F.3d 445, 459 (4th Cir. 2012); United States v. Evers, 669 F.3d 645, 659 (6th Cir. 2012); *United States v. Laraneta*, 700 F.3d 983, 989-990 (7th Cir. 2012); United States v. Kennedy, 643 F.3d 1251, 1262-63 (9th Cir. 2011); *United States v. McGarity*, 669 F.3d 1218, 1269 (11th Cir. 2012); and *United States v. Monzel*, 641 F.3d 528, 534-35 (D.C. Cir. 2011), cert. denied, 132 S. Ct. 756 (2011).

that Paroline should be held liable, jointly and severally, for the full $3.3 million. *Id*. The Supreme Court rejected the holdings of both lower courts and instead adopted the middle-ground position advanced by the Solicitor General. The Court's central holding was that "a court applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general [aggregate] losses." *Id*. at 1727.

The Supreme Court held that the statute requires proximate cause for all six of the statute's loss categories (including, for example, medical and counseling expenses) and not only for the catchall category of "any other losses suffered by the victim as a proximate result of the offense," 18 U.S.C. § 2259(b)(3)(F). 134 S. Ct. at 1720; *Id*. at 1731 (Roberts, C.J., dissenting); *Id*. at 1735-36 (Sotomayor, J., dissenting). The Court also held that proximate causation was not at issue on the facts of *Paroline* because Amy's losses were of the type that one should expect a child-pornography victim to suffer—they are both foreseeable results of and within the scope of the risk created by child pornography production, distribution, and possession. *Id*. at 1722 (op. of the Court); *Id*. at 1731 (Roberts, C.J., dissenting); *Id*. at 1736 (Sotomayor, J., dissenting).

As for cause-in-fact, recognizing that child-pornography victims' injuries result from an "atypical causal process," the Court rejected the traditional but-for causation standard advocated by Paroline. *Id*. at 1722 (op. of the Court). Instead, the Court in essence adopted the government's aggregate-causation theory, based on tort law, that when multiple causes combine to produce an event and no single cause is either necessary or sufficient, each cause can still be said to be one cause-in-fact of the event. *Id*. at 1723-27;

*see also 1 Restatement (Third) of Torts:Liability for Physical and Emotional Harm* § 27, p. 376 (2005); W. Keeton, D. Dobbs, R. Keeton, & D. Owen, *Prosser and Keeton on Law of Torts* § 41, p. 268 (5th ed. 1984). This alternative approach to causation is appropriate "where it can be shown both that a defendant possessed a victim's images and that a victim has outstanding losses caused by the continuing traffic in those images but where it is impossible to trace a particular amount of those losses to the individual defendant by recourse to a more traditional causal inquiry." 134 S. Ct. at 1727.

Turning to how much each defendant should pay, the Court concluded that defendants like Paroline should be required to pay part of what the Court called Amy's "general" losses, that is, all the losses caused by the distribution, receipt, and possession of her images. 134 S.Ct. at 1722. The size of that portion should be determined by the district court, in the exercise of its discretion. *Id*. at 1728. The Court repeatedly emphasized that there is no "precise mathematical inquiry" governing this determination and that district courts will have to exercise "discretion and sound judgment" in fashioning awards. *Id*. Courts may begin their calculations by determining "the amount of the victim's losses caused by the continuing traffic in the victim's images (excluding, of course, any remote losses . . .)." *Id*. Courts may then consider a variety of factors, which "could include": (1) "the number of past criminal defendants found to have contributed to the victim's general losses"; (2) "reasonable predictions of the number of future [defendants]"; (3) "any available and reasonably reliable estimate of the broader number of offenders"; (4) whether the defendant distributed the images; (5) whether he contributed to their original production; (6) how many images he possessed; and (7) "other facts relevant to the

defendant's relative causal role." *Id*. The Court also noted that the government could "inform the district courts of the restitution sought and ordered in other cases." Using these "rough guideposts," courts should determine restitution orders that are neither "severe" nor "trivial." *Id*. The Court thus vacated the en banc Fifth Circuit's contrary holding, *In re Amy Unknown*, 701 F.3d 749, 752 (5th Cir. 2012), and remanded the case for further proceedings.

## II.     *Paroline's* Suggested Factors

The *Paroline* Court suggested consideration of the above factors that "bear on the relative causal significance of the defendant's conduct" in relation to the victims' losses. 134 S.Ct. at 1728. However, the *Paroline* Court repeatedly emphasized that there was no "precise algorithm for determining the proper restitution amount," and that "[t]hese factors need not be converted into a rigid formula, especially if doing so would result in trivial restitution orders." 134 S.Ct. at 1728, 1729. *Paroline* interpreted the causation standard with the paramount goal of victims receiving some restitution in each case. Further,

> courts can only do their best to apply the statute as written in a workable manner, faithful to the competing principles at stake: that victims should be compensated and that defendants should be held to account for the impact of their conduct on those victims, but also that defendants should be made liable for the consequences and gravity of their own conduct, not the conduct of others.

*Id*. at 1729. The factors discussed in *Paroline* (and referenced above) are only suggestions, not requirements. Indeed, it is the United States' position that many of those suggestions are unworkable when applied to actual practice. The United States will address the suggested factors in *Paroline*, and then propose additional or more meaningful factors for the Court to consider in the following section, specific to each victim in this case.

A.   **The number of past defendants found to have contributed to the victim's general losses**

This factor is completely unworkable. The government cannot provide a reliable or even approximate number of past criminal defendants who have possessed or distributed any given victim's image. First, the United States Attorney's Office only has access to federal data, and has no information about state or local prosecutions, which are growing in number. The federal case management system, LIONS does not contain any victim information, so there is no available method to correspond LIONS records with any victim record. Additionally, prosecutors charge and plead cases in a variety of ways which may not capture which defendants actually possessed or distributed a victim's image. In this regard, a victim's image may appear in an investigation but be otherwise unassociated with a defendant, criminal case, or conviction.

While the Victim Notification System (VNS) may be able to provide the number of times a victim has been identified in a federal investigation, that number is neither comprehensive nor reliable because the investigative agency may not have entered the victim information into VNS, may not have identified the victim timely or at all, or may not be connected to VNS (e.g., Homeland Security Investigations). Further, even if a list of matters involving a particular victim is generated from VNS, it is not possible to ascertain where each case stands in the criminal justice process without reviewing each individual record. A defendant whose case is merely under investigation; or whose charges have been declined, dismissed or adjudicated not guilty; or who has had the counts

dismissed involving the victim's image, should not be counted as contributing to the victim's harm.

Finally, a "Seen Before" or "Distribution Report" from the National Center for Missing and Exploited Children will not afford a reliable estimate of how many defendants have contributed to the victim's loss because these reports only indicate how many times NCMEC has identified *an investigation* involving the victim's images. The reports do not provide any additional information regarding the status of the investigation, and whether the defendants have in fact contributed to the victim's loss.

In addition, if the numbers were able to be obtained from these sources, their use as a divisor for the victim's general losses would inevitably lead to ever-diminishing "trivial" or "nominal" restitution awards, which are prohibited under *Paroline.*

For these reasons, the United States does not attempt to provide the Court with the number of past defendants found to have contributed to each victim's general losses. That number is not required, and it is neither meaningful nor helpful to the Court in determining an appropriate restitution award.

**B.     Reasonable predictions of the number of future defendants**

This factor is impossible to estimate with any degree of certainty due to the difficulty in predicting technological, market and investigative advances.  Further, what would an estimate of future defendants provide the court?  Presumably, it would allow a Court to divide the victim's general losses over many more future defendants (which appear to suggest that courts should withhold restitution for later defendants).  This approach would

unnecessarily and improperly abrogate a victim's right to "full and timely restitution." 18 U.S.C. § 3771(a)(6).

By all present indications, it is unlikely that the future number of defendants will ever decrease. Suffice to say, there will likely be more defendants downstream who contribute to these victims (and other victims) general losses. However, if the "future number of defendants" is used as a divisor for a restitution award, that approach would lead to ever-diminishing "trivial" or "nominal" restitution awards, which are prohibited under *Paroline*. Again, the United States does not attempt to provide the Court with such predictions, because they are unreasonable and neither meaningful nor helpful to the Court in determining an appropriate restitution award.

### C. Reasonably reliable estimates of the broader number of offenders

Again, this factor is impossible to estimate with any degree of certainty, due to the difficulty in ascertaining how many offenders may involve themselves with a particular victim's image over time. Even if the United States could provide a "reasonably reliable estimate," that number would not be meaningful for determining restitution as to a particular victim, because there is no estimate regarding the likelihood of those offenders being identified, prosecuted, convicted, and ordered to pay restitution. Presumably, this number would serve as a divisor of the restitution award, such that it would lead to ever-diminishing "trivial" or "nominal" restitution awards, which are prohibited under *Paroline*.

### D. Whether the defendant distributed the images

This factor is the first listed that would be relevant to determining the loss attributable to a particular defendant. When a defendant distributes images of a victim in

such a manner that those images entered or continued to move through the wider stream of commerce (e.g., shared them on a child pornography bulletin board, emailed them to other offenders, or made them available on a peer-2-peer file sharing network), this factor should weigh in favor of a higher restitution award because it reflects a greater role in the overall causal process. In this regard, the *Paroline* Court identified a meaningful way to distinguish between possessors and distributors. However, the Court did not provide any further guidance for crafting a restitution amount that it neither "trivial" nor "nominal."

In this case, the defendant produced about 300 videos depicting CV1 engaged in sexually explicit activity and distributed that child sexual abuse material to others in order to obtain bitcoin and items purchased by others from an Amazon wish list. But he also collected child pornography videos depicting other children and then altered them and made them into "original" movies that he could post on the website and obtain website credit, to use for the purchase of additional child sexual abuse material. Defendant would insert a title page, his signature email, and often additional graphics and music so that the hash value of the new video would not be identified as a pre-existing child pornography video.

The email address used by the Defendant, zhch6z@sigaint.org is displayed at the beginning of many of the videos. Sigaint is a hidden mailbox service that was only accessible via Tor. Sigaint has been offline since approximately February of 2017. This email address has been associated with a number of posts on websites located on the darknet related to the production and sale of child pornography. Putting the material depicting these other victims into the stream of commerce escalates restitution to a higher

level due to the defendant's greater contribution to these victim's overall losses by putting the material into the stream of commerce.

### E. Whether the defendant contributed to the original production

Like distribution, participation in the original production and/or distribution shows a much greater contribution to the victims' overall loss. In this case, the Defendant produced the images and videos of CV1, but also took sexual abuse material produced by other offenders and added a title page, music and essentially "produced" additional material of these victims, further exploiting the victims and contributing to their losses.

### F. How many images the defendant possessed

The number of images of the victim seeking restitution possessed by the defendant could, at some point, make the defendant more or less culpable for the victim's losses than other possessors or distributors. In the abstract, the notion that fewer images adds less harm to a victim is appealing; however, even the possession of one image by a defendant is sufficient to trigger the harm experienced by the victims.

How should the number of images or videos relate to the restitution award? Practically speaking, the number of images or videos of a particular victim shows more about the defendant's interest in exploiting a particular victim. In this regard, the number of images (or videos) demonstrates that a defendant sought out and exploited a victim to a greater or lesser degree, but that information goes more to the defendant's culpability rather than his role in the causal process.

Arguably, the number of images could be meaningful if that number was used to compare against other defendants engaged in similar behavior relating to a particular

victim. However, because the number of images of a particular victim relative to a particular defendant is not tracked, usage of the number of images or videos is not particular useful (nor available) to the Court in determining a restitution amount. Further, figuring out the number of images is heavily dependent upon matching hash values of a defendant's files to previously identified files of each series. If a file from a series has been modified (thus changing its hash value), it may still be in a defendant's collection but otherwise undetected.

As a matter of common sense and practicality, the United States would agree with the general proposition that the more a defendant involves himself with a particular victim, the more he contributes to that victim's losses. That "level of involvement" may be discerned by the number of images or videos as well as the length of time those images were possessed. Also relevant are facts associated with *how* the defendant possessed the images – did he seek a particular victim out, did he organize his collection around a particular victim, did he organize or trade according to series, what type of images of the victim did he seek, etc. Similarly, the type of material associated with the defendant, whether it consisted of an image or video or multiples thereof, or whether the material depicts sadistic conduct versus lewd exhibition, would also tend to show a greater contribution to the victim's losses, as such tends to show greater intrusion into the privacy and dignity of the victim.

### G. Other facts relevant to the defendant's relative causal role

The *Paroline* decision wisely kept the door open for the Court to consider additional facts specific to a defendant's conduct. In its review of the Defendant's conduct in this

case, in addition to Defendant's criminal behavior regarding the sexual abuse and exploitation of CV1, as mentioned above, the Defendant received payment for CV1's videos, and took the time to edit images and videos of other victim's to add his electronic signature (zhch6z and zhch6z@sigaint.org) so that he could obtain website credit for what would then be considered original material. This escalates the Defendant's role with regard to the eighteen victims seeking restitution.

### H. Restitution sought and ordered in other cases

The *Paroline* decision noted that a court may consider whether restitution has been sought, and ordered, in other cases. The size of other awards the victim has received in prior cases is, at some level, an indication of a "reasonable" amount. For a victim who has already received a substantial number of restitution awards, looking at those prior awards to find a benchmark amount might be the most useful factor. For example, in *Paroline*, the United States noted that 85% of the awards for Amy fell within a range of $1,000 to $50,000, with the average award in that range being approximately $5,400.

The United States can provide restitution orders from other cases for the victims claiming restitution in this case. These lists would be the product of voluntary self-reports by AUSAs and would not include every case where restitution was ordered. These lists may provide some guidance to the Court, although the United States would note these listings do not indicate whether the order was the product of an agreed amount, whether the restitution was a paid-up-front amount (the bird in the hand) or the product of litigation.

In the end, and this is critical, the amount of restitution must be reasonable. It may not be "trivial," "token," or "nominal." *Paroline*, 134 S. Ct. at 1727.

### III. Summary of Restitution Requests

For purposes of determining restitution in this case, a "victim" means "the individual harmed as a result of a commission of a crime" under Chapter 110 of Title 18, which includes defendant's crimes. 18 U.S.C. § 2259(c). The victims in the eighteen (18) series listed in the Presentence Investigation Report are all victims of defendant's criminal conduct. All eighteen series were identified in the NCMEC report that was generated for this case based on files found in the Defendant's possession on December 19, 2017.

A. "Chelsea" of the 2crazygurls series is requesting restitution in the amount of no less than $10,000. Chelsea's economic and psychological losses are approximately $2,475,865.00. Defendant possessed four (4) files depicting Chelsea.

B. "April" of the Aprilblonde series is requesting restitution in the amount of no less than $10,000. April's economic and psychological losses are approximately $2,703,266.00. Defendant possessed twelve (12) files depicting April.

C. "Maureen" of the Lighthouse1 series is requesting restitution in the amount of $10,000. Maureen's losses are estimated to exceed $440,000.00. Defendant possessed six (6) files depicting Maureen.

D. "Susie" of the Lighthouse4 series is requesting restitution in the amount of no less than $5,000.00. Defendant possessed six (6) files of Susie.

E. "Sarah" of the Marineland1series is requesting restitution in the amount of $10,000.00. Sarah's losses total $2,758,335.28. There are currently 1,303 orders of

restitution and Sarah has received payment for less than half of her losses. Defendant possessed ten (10) files depicting Sarah.

      F.     "Cara" of the Motorcouch1 series is requesting restitution in the amount of $7,500.00. Cara has documented losses of $57,758.82. There are 139 prior restitution orders of which 15 defendants have actually made some payment. Cara has received less than $10,000 in payments towards her loss. Defendant possessed one (1) file depicting Cara.

      G.     "Pia," "Mya," and "Ava" of the Sweet Sugar series are requesting $5,000.00 in restitution per victim. Pia has received $46,691.44 in restitution payments, to date; Mya has received $9,300.22 and Ava has received $10,564.94. The defendant possessed twenty-eight (28) files depicting this series.

      H.     "Lily" of the Vicky series is requesting $10,000 in restitution. Lily's losses total $6,008,536.29. There are currently 2,051 orders of restitution entered for Lily; however, she has received payment for less than half of her losses. Defendant possessed two hundred and forty-seven (247) files depicting Lily.

      I.     "Sloane" of the Tara series is requesting $10,000 in restitution. Sloane's losses are estimated to be between $1,2000,000 and $1,500,000. There are currently 629 orders of restitution. Defendant possessed three hundred and three (303) files depicting Sloane.

      J.     "Casseaopeia" of the Lighthouse3 series is requesting $3,000 in restitution. Casseaopeia's economical damage is equal to $1,078,159.00. Defendant possessed six (6) files depicting Casseaopeia.

K. "Erika" and "Tori" of PinkHeartSisters series are requesting $3,000 in restitution per victim. Defendant possessed ninety-three (93) files depicting this series.

L. "Erin" and "Fiona" of the BluesPink series are requesting $3,000 in restitution per victim. Defendant possessed two (2) files depicting this series.

M. "Kiera" of the BluesPink3 series is requesting $3,000 in restitution. Defendant possessed two (2) images of Kiera.

N. "Jenny" of the Jenny series is requesting $3,000 in restitution. Defendant possessed forty-three (43) images of the Jenny series.

The victim impact statements of these victims highlight the trauma suffered not only at the time of the initial abuse, but also the ongoing trauma caused by the constant exploitation the sharing of this material causes. The proliferation of the material is what causes the anxiety that whomever these victims may meet or whomever may cross their paths on the street has viewed the scenes of the victim's sexual assaults and pleasured themselves with the victim's pain.

As *Paroline* acknowledged, "the victim suffers continuing and grievous harm as a result of her knowledge that a large, indeterminate number of individuals have viewed and will in the future view images of the sexual abuse she endured." *Paroline*, 134 S.Ct. at 1727. The evidence in this case is sufficient to show Defendant's offenses proximately caused losses to each of the victims requesting restitution and is a proximate cause of additional losses to each of them. Therefore, they are each entitled to restitution.

Based upon the requests for restitution submitted by each of the eighteen (18) victims, as well as the factors set forth above, the United States is requesting restitution be ordered in a total amount of $89,000 as follows:

1. $3,000 paid to Chelsea of the 2crazygurls series, with payments drafted to "Restore the Child in Trust for Chelsea" and mailed to Restore the Child, PLLC, 2522 N. Proctor St, Ste 85, Tacoma, Washington, 98406.
2. $3,000 paid to Maureen, of the Lighthouse1 series, made payable to paid to "Deborah A. Bianco, in trust for Maureen" and mailed to Deborah A. Bianco, 14535 Bellevue-Redmond Road, Suite 201, Bellevue, WA 98007.
3. $3,000 paid to Susie of the Lighthouse4 series, with payments drafted to "Restore the Child in Trust for Susie" and mailed to Restore the Child, PLLC, 2522 N. Proctor St, Ste 85, Tacoma, Washington, 98406.
4. $3,000 paid to Cara, of the MotorCouch1 series, made payable to Carol L. Hepburn I/T/F Cara", and mailed to PO Box 17718, Seattle, WA 98127.
5. $3,000 paid to Cassiopeia, a victim of Lighthouse 3 series, made payable to "Marsh Law Firm PLLC in trust for Cassiopeia" and mailed to Marsh Law Firm PLLC, ATTN: Cassiopeia, PO Box 4668 #65135, New York, NY 10163-4668.
6. $3,000 paid to Erin, a victim of the BluesPink series, made payable to "Marsh Law Firm PLLC in trust for Erin" and mailed to Marsh Law Firm PLLC, ATTN: Erin, PO Box 4668 #65135, New York, NY 10163-4668.
7. $3,000 paid to Fiona, a victim of the BluesPink series, made payable to "Marsh Law Firm PLLC in trust for Fiona" and mailed to Marsh Law Firm PLLC, ATTN: Fiona, PO Box 4668 #65135, New York, NY 10163-4668.
8. $3,000 paid to Kiera, a victim of theBluesPink3 series, made payable to "Marsh Law Firm PLLC in trust for Kiera" and mailed to Marsh Law Firm PLLC, ATTN: Kiera, PO Box 4668 #65135, New York, NY 10163-4668.
9. $5,000 be paid to April of the Aprilblonde series, with payments drafted to "Restore the Child in Trust for April" and mailed to Restore the Child, PLLC, 2522 N. Proctor

St, Ste 85, Tacoma, Washington, 98406.

10. $5,000 paid to Sarah, of the Marineland1 series, made payable to Carol L. Hepburn I/T/F Sarah", and mailed to PO Box 17718, Seattle, WA 98127.

11. $5,000 paid to Erika, a victim of the Pink Heart Sisters series, made payable to "Marsh Law Firm PLLC in trust for Erika" and mailed to Marsh Law Firm PLLC, ATTN: Erika, PO Box 4668 #65135, New York, NY 10163-4668.

12. $5,000 paid to Tori, a victim of the Pink Heart Sisters series, made payable to "Marsh Law Firm PLLC in trust for Tori" and mailed to Marsh Law Firm PLLC, ATTN: Tori, PO Box 4668 #65135, New York, NY 10163-4668.

13. $5,000 paid to Pia, a victim of the Sweet White Sugar series, made payable to "Deborah A. Bianco, in trust for Pia" and mailed to Deborah A. Bianco, 14535 Bellevue-Redmond Road, Suite 201, Bellevue, WA 98007.

14. $5,000 paid to Mia, a victim of the Sweet White Sugar series, made payable to "Deborah A. Bianco, in trust for Mia" and mailed to Deborah A. Bianco, 14535 Bellevue-Redmond Road, Suite 201, Bellevue, WA 98007.

15. $5,000 paid to Ava a victim of the Sweet White Sugar series, made payable to "Deborah A. Bianco, in trust for Ava" and mailed to Deborah A. Bianco, 14535 Bellevue-Redmond Road, Suite 201, Bellevue, WA 98007.

16. $10,000 be paid to Lily, of the Vicky series, made payable to Carol L. Hepburn I/T/F Lily", and mailed to PO Box 17718, Seattle, WA 98127.

17. $10,000 be paid to Sloan, of the Tara series made payable to Carol L. Hepburn I/T/F Tara", and mailed to PO Box 17718, Seattle, WA 98127.

18. $10,000 paid to Jenny, the victim of the Jenny series, made payable to "Marsh Law Firm PLLC in trust for Jenny" and mailed to Marsh Law Firm PLLC, ATTN: Jenny, PO Box 4668 #65135, New York, NY 10163-4668.

The United States contends that these amounts are neither token nor trivial, nor too severe.

                                                Respectfully submitted,

                      JAIME ESPARZA
                      United States Attorney

                      <u>s/ Tracy Thompson</u>
                      Tracy Thompson
                      Assistant United States Attorney
                      TX Bar #24107031
                      600 NW Loop 410, Suite 600
                      San Antonio, Texas 78216

## **CERTIFICATE OF SERVICE**

      I hereby certify that on October 21, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to Michael Gross, attorney for Defendant Paul Casey Whipple.

                      <u>s/Tracy Thompson</u>
                      Tracy Thompson
                      Assistant U.S. Attorney